IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PFLAG, INC., et al.,

    Plaintiffs,

v.

DONALD J. TRUMP, in his official capacity as president of the United States, et al.,

    Defendants.

Civil Action No. BAH-25-337

**MOTION FOR LEAVE TO FILE BRIEF OF**
***AMICI CURIAE* AMERICAN ACADEMY OF PEDIATRICS AND ADDITIONAL NATIONAL AND STATE MEDICAL AND MENTAL HEALTH ORGANIZATIONS**

Pursuant to Local Rule 105.12.b, proposed *Amici Curiae* American Academy of Pediatrics and Additional National and State Medical and Mental Health Organizations hereby move for leave to file an amicus brief in support of Plaintiffs' motion for preliminary injunction. In furtherance of the motion, proposed *amici* state as follows:

1. Proposed *amici* are the American Academy of Pediatrics, the Academic Pediatric Association, the American Academy of Child & Adolescent Psychiatry, the American Academy of Family Physicians, the American Academy of Nursing, the American College of Obstetricians and Gynecologists, the American College of Osteopathic Pediatricians, the American College of Physicians, the American Pediatric Society, the Association of American Medical Colleges, Association of Medical School Pediatric Department Chairs, Inc., the Maryland Chapter of the American Academy of Pediatrics, the Endocrine Society, the National Association of Pediatric Nurse Practitioners , the Pediatric Endocrine Society, the Society for Adolescent Health and

1

Medicine, the Society of Pediatric Nurses, and the World Professional Association for Transgender Health (collectively, "*amici*").  *Amici* are a group of 18 professional medical and mental health organizations seeking to ensure that all individuals, including those with gender dysphoria, receive the optimal medical and mental healthcare they need and deserve.  *Amici* include both national and state organizations and represent thousands of health care providers who have specific expertise with the issues raised in the amicus brief.

2. As a group of well-respected medical and mental health organizations, *amici* seek to offer this Court their scientific views and insights regarding the serious medical condition known as gender dysphoria; the widely-accepted view of the professional medical community that gender-affirming care is the appropriate treatment for treating individuals (and particularly adolescents) suffering from gender dysphoria; and the consequences of effectively denying access to important gender-affirming medical care to such patients, as would be required by Executive Order No. 14187 (the "Healthcare Ban").

3. *Amici* support Plaintiffs' motion for a preliminary injunction.  No counsel for a party authored the proposed brief in whole or in part, and no person other than *amici* or their counsel made any monetary contributions intended to fund the preparation or submission of the proposed brief.

4. The Court should consider *amici's* brief because it provides important expertise and addresses misstatements about the treatment for transgender adolescents.

5. By submitting an amicus brief in this matter, *amici* seek to assist this Court on an issue of great importance to many transgender individuals, including adolescents and their families, as well as the medical professionals who treat them, namely the prevention and treatment of gender dysphoria.  *Amici* intend to provide this Court with an empirically grounded

view of: (i) gender dysphoria; (ii) gender-affirming medical care, which the professional medical community widely accepts as the appropriate treatment for carefully evaluated adolescents with gender dysphoria who meet certain diagnostic criteria; and (iii) the irreparable harm that would be caused to adolescent patients if the Healthcare Ban is not enjoined. *Amici* thus fulfill the quintessential role for amici curiae, and courts routinely authorize the filing of amicus briefs in such circumstances. *See, e.g.*, *Shoemaker v. City of Howell*, 795 F.3d 553, 562 (6th Cir. 2015) (describing the "traditional function of an amicus curiae" as "assist[ing] in cases of general public interest by supplementing the efforts of private counsel and by drawing the court's attention to [matters] that might otherwise escape consideration") (internal quotations omitted).

6. Gender dysphoria is a clinical condition that is marked by distress due to an incongruence between the patient's gender identity *(i.e.*, the innate sense of oneself as being a particular gender) and sex assigned at birth. This incongruence can lead to clinically significant distress and impair functioning in many aspects of the patient's life. The widely accepted view of the professional medical community, including that of the respected professional organizations participating here as *amici,* is that gender-affirming care is the appropriate treatment for gender dysphoria and that, for some carefully evaluated adolescents, gender affirming medical care including puberty blockers and hormone therapy are necessary.

7. Because the Healthcare Ban would effectively deny access to important gender-affirming medical care for transgender adolescents in Maryland and throughout the United States, it is antithetical to the mission and values of *amici*, all of whom are committed to ensuring that all patients, including transgender individuals, receive the best possible medical care. Drawing on empirical research and *amici*'s extensive experience and expertise in their

respective fields, the proposed amicus brief: (i) provides background on gender identity and gender dysphoria; (ii) describes the professionally-accepted medical guidelines for treating gender dysphoria as they apply to adolescents, and the scientifically rigorous process by which these guidelines were developed; (iii) describes the evidence that supports the effectiveness of this care for adolescents with gender dysphoria; and (iv) corrects inaccuracies in the purported basis for the Healthcare Ban.

8. Courts regularly permit *amici* to file *amicus curiae* briefs to offer their unique expertise and insight on issues of physical and mental health and welfare, including with respect to transgender youth. For example, district courts in many states considering challenges to similar laws targeting gender-affirming care have accepted and cited amicus briefs filed by many of the same organizations that seek to file a brief here. *See, e.g.*, *Brandt v. Rutledge*, 551 F. Supp. 3d 882, 890 (E.D. Ark. 2021), *aff'd sub nom. Brandt by & through Brandt v. Rutledge*, 47 F.4th 661 (8th Cir. 2022) (citing brief and observing "[t]he consensus recommendation of medical organizations is that the only effective treatment for individuals at risk of or suffering from gender dysphoria is to provide gender-affirming care."); *Eknes-Tucker v. Marshall*, 2022 WL 1521889, at *2 (M.D. Ala. May 13, 2022) (citing brief and observing *amici* "endorse these guidelines as evidence-based methods for treating gender dysphoria in minors."); *see also Doe v. Thornbury*, Case No. 3:23-cv-00230, ECF No. 61 (W.D. Ky. June 28, 2023) (granting *amici*'s motion for leave to file amicus brief); *Koe v. Noggle*, Case No. 1:23-cv-02904, ECF No. 104 (N.D. Ga. Aug. 11, 2023) (same); *Poe v. Drummond*, Case No. 4:23-cv-00177,ECF No. 72 (N.D. Okla. June 12, 2023) (same).[1]

---

[1] *See also, e.g.*, *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 594 n.1 (4th Cir. 2020) (crediting "leading medical, public health, and mental health organization[]" amici with helping the court to "develop[] a fact-based understanding of what it means to be transgender"); *Adams by Kasper v. Sch. Bd. of St. Johns Cnty.*, 318 F. Supp. 3d (continued…)

9.      Moreover, there is no downside to granting *amici*'s motion for leave to file the amicus brief. Courts have recognized that "it is preferable to err on the side of" permitting amicus briefs. *Neonatology Assocs., P.A. v. Comm'r*, 293 F.3d 128, 133 (3d Cir. 2002) (Alito, J.). This is so because "[i]f an amicus brief that turns out to be unhelpful is filed, the [court], after studying the case, will often be able to make that determination without much trouble and can then simply disregard the amicus brief." *Id.* "On the other hand, if a good brief is rejected, the [court] will be deprived of a resource that might have been of assistance." *Id*.

## CONCLUSION

For the foregoing reasons, proposed *amici* respectfully request that this Court grant their motion for leave to file the attached amicus brief in support of Plaintiffs' Motion for a Preliminary Injunction.

---

1293, 1298 n.14 (M.D. Fla. 2018) (granting leave to file an amicus brief in support of a transgender male student, and noting that "the position of [amici] as to the appropriate standard of care for gender dysphoria is useful to understanding that diagnosis").

5

| | |
|---|---|
| Dated: February 21, 2025 | Respectfully submitted, |
| | /s/ *Abigail P. Barnes* |
| Cortlin H. Lannin (*pro hac vice* forthcoming) | Abigail P. Barnes (Bar No. 20004) |
| COVINGTON & BURLING LLP | D. Jean Veta (*pro hac vice* forthcoming) |
| Salesforce Tower | William Isasi (*pro hac vice* forthcoming) |
| 415 Mission St., Suite 5400 | COVINGTON & BURLING LLP |
| San Francisco, CA 94105 | One CityCenter |
| Phone: (415) 591-6000 | 850 Tenth St., N.W. |
| Fax: (202) 662-6291 | Washington, D.C. 20001 |
| clannin@cov.com | Phone: (202) 662-6000 |
| | Fax: (202) 662-6291 |
| Yuval Mor (*pro hac vice* forthcoming) | abarnes@cov.com |
| COVINGTON & BURLING LLP | jveta@cov.com |
| The New York Times Building | wisasi@cov.com |
| 620 Eighth Avenue | |
| New York, New York 10018 | |
| Phone: (212) 841-1000 | |
| Fax: (202) 662-6291 | |
| ymor@cov.com | |

*Counsel for Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

*/s/ Abigail P. Barnes*
Abigail P. Barnes