**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| PFLAG, INC., et al., | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| vs. | ) | |
| | ) | Civil Action No. BAH-25-337 |
| DONALD J. TRUMP, in his official capacity | ) | |
| as President of the United States, et al., | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |
| _____ | ) | |

**BRIEF OF *AMICUS CURIAE* COMMUNICATIONS WORKERS OF AMERICA
SUPPORTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**INTRODUCTION**

Communications Workers of America ("CWA") respectfully urges the Court to grant a preliminary injunction enjoining Section 4 of Executive Order 14187, cruelly and falsely titled "Protecting Children from Chemical and Surgical Mutilation," 90 Fed.Reg. 8771 (Jan. 28, 2025) (the "Denial of Care Order"), and Section 3(g) of Executive Order 14168, with the Orwellian title, "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government," 90 Fed.Reg. 8615 (Jan. 20, 2025) (the "Gender Identity Order"). The Orders are already causing extreme irreparable harms across the country by cutting off life-saving medical care to vulnerable youth, threatening doctors and other healthcare providers with criminal prosecution for upholding their ethical duties to provide standard-of-care treatment, and risking the disruption of necessary healthcare across the general population through the threat of withdrawal of federal funding to hospitals and other medical institutions.

1

The Orders are causing irreparable harm right now. They are part of an onslaught of blatantly unlawful and unconstitutional executive orders and actions issued by President Trump in the first weeks of his presidency. One of the most fundamental duties of the federal judiciary is to prevent such unconstitutional actions by the Executive Branch. Other federal courts across the country have enjoined a wide range of the President's unlawful acts—including actions that, like the Order here, expressly and intentionally discriminate against transgender individuals and usurp Congress's spending powers. To protect transgender youths, their parents, their healthcare providers, and indeed our very constitutional fabric, this Court should do the same here.

## ARGUMENT

**I.      The Orders Are Already Causing Irreparable Harm by Denying Transgender Youth Necessary Healthcare and Services and Threatening the Livelihoods and Basic Personal Liberty of Their Physicians and Other Healthcare Providers.**

Plaintiffs filed voluminous evidence from youth, parents, physicians, and leaders demonstrating the serious, immediate harms threatened by the Orders. The Orders violate not only Plaintiffs' constitutional rights, but also the rights of hundreds of thousands of transgender youths (including legal adults), their parents, and their healthcare providers across the nation, including CWA's members. *See* ECF 62 (TRO Memorandum) at 42-45 (Plaintiffs have demonstrated likelihood of success on equal protection claim); Williams Institute, *Impact of the Ban on Gender-Affirming Care on Transgender Minors* (Jan. 2025) at 6 (an estimated 300,100 youths between ages 13 and 17 identify as transgender nationally, with more than 180,000 living in states where access to gender-affirming care is permitted).[1]

The serious, irreparable harm to transgender youths that will result from restricting access to gender-affirming care, absent preliminary injunctive relief from this Court, cannot be

---

[1] https://williamsinstitute.law.ucla.edu/wp-content/uploads/GAC-Access-EO-Jan-2025.pdf

overstated. *See Poe by & through Poe v. Labrador*, 709 F.Supp.3d 1169, 1198 (D. Idaho 2023) (state law restricting transgender youth access to gender-affirming care caused irreparable harm; such care "can be a crucial part of treatment for adolescents with gender dysphoria, and necessary to preserve their health"), *partial stay granted on other grounds pending appeal*, 144 S.Ct. 921 (2024). As demonstrated by the detailed, and harrowing, declarations from youths, parents, and healthcare providers submitted in support of Plaintiffs' TRO and preliminary injunction motions, for many transgender and gender fluid young people affected by the Orders, the issue before the Court is literally a matter of life and death. As stated bluntly by a physician in another case, if the Trump administration succeeds in quashing access to gender-affirming care—as is already happening—"transgender adolescents will die," because "[t]here are going to be young people who are going to take their lives if they can no longer receive this care." *Washington v. Trump*, No. 2:25-cv-00244-LK (W.D.Wash.), ECF 13 (Physician Plaintiff 1 Declaration, Feb. 5, 2025) ¶26; *see also* TRO Memorandum at 47 ("care has already ceased and … each day that passes exacerbates Plaintiffs' injuries, which … include … risk of suicide").

The Orders are also harming healthcare workers. Healthcare workers across the country are being forced—right now—to choose between complying with the unconstitutional, discriminatory Orders while watching their patients suffer, or complying with their deeply held ethical commitments and obligations to provide life-saving gender-affirming care to their patients while risking the devastation of their professional practices and personal lives, through the loss of federal funding to their institutions and the threat of personal criminal prosecution. *See Washington v. Trump*, __ F.Supp.3d ___, 2025 WL 509617, *4, 12-14 (W.D.Wash. Feb. 16, 2025) (Section 8(a) of Denial of Care Order "purports to expand the scope of conduct criminalized" by federal law to include the medical treatments listed in the Order).

In just the few weeks since the President signed the Orders, hospital systems across the country have halted or modified their treatment of transgender youths, despite the fact that many state Attorneys General have warned that the termination of such care violates state anti-discrimination laws. *See, e.g.*, *Attorney General Bonta Reminds Hospitals and Clinics of Anti-Discrimination Laws Amid Executive Order on Gender Affirming Care* (Feb. 5, 2025);[2] New York Attorney General Letitia James, *Dear Colleague Letter* (Feb. 3, 2025).[3] We summarize just some examples:

Children's National Hospital in Washington DC stopped "all puberty blockers and hormone therapy prescriptions for transgender youth patients, per the guidelines in the Executive Order issued by the White House …." *Children's National Hospital Statement on Executive Order*, CHILDREN'S NAT'L (Jan. 30, 2025).[4]

Children's Hospital of the King's Daughters, in Norfolk, Virginia, has "suspend[ed] hormone therapy and puberty blocker treatments specifically for gender-affirming care for children under the age of 19," because of "the White House Executive Order issued on January 28." *Gender-related Care at CHKD*, CHILDREN'S HOSP. OF THE KING'S DAUGHTERS (last visited Feb. 23, 2025).[5]

Children's Hospital of Los Angeles "paus[ed] the initiation of hormonal therapy for 'gender affirming care patients'" as it assessed the "executive order from President Trump targeting gender-affirming care for young people." Emily Alpert Reyes, *Children's Hospital L.A. Stops Initiating Hormonal Therapy for Transgender Patients Under 19*, L.A. TIMES (Feb. 4,

---

[2]    https://oag.ca.gov/news/press-releases/attorney-general-bonta-reminds-hospitals-and-clinics-anti-discrimination-laws

[3] https://ag ny.gov/sites/default/files/letters/ag-james-to-hc-providers-re-tro-letter-2025.pdf

[4] https://www.childrensnational.org/about-us/newsroom/2025/statement-on-executive-order

[5] https://www.chkd.org/our-care/specialty-care/adolescent-medicine/gender-related-care-at-chkd/

2025 2:08 PT).[6] The hospital, citing this Court's temporary restraining order, has resumed

providing hormonal therapy to transgender youth. Emily Alpert Reyes, *Children's Hospital L.A.*

*Lifts Recent Limits on Hormonal Therapy for Transgender Youth*, L.A. TIMES (Feb. 21, 2025).[7]

Seattle Children's Hospital has cancelled gender affirmation surgery, citing the Denial of

Care Order. Ann Dornfeld, *Seattle Children's Halts Gender-Affirming Surgeries After Executive*

*Order Threatens Loss of Federal Funds*, KUOW (Feb. 6, 2025, 3:12 PM).[8] The hospital's

spokesperson stated that it began cutting these services because "losing eligibility would

jeopardize care for [the hospital's other] patients across the region." *Id.*

Lurie Children's Hospital in Chicago has suspended all gender-affirming surgeries for

patients under the age of 19. Emmy Victor & Ethan Illers, *Protestors Rally Outside Lurie*

*Children's Hospital over Halt in Gender-Affirming Surgeries*, WGN9 (Feb. 15, 2025 6:56

CST).[9] It cited "the rapidly evolving environment" wrought by the Denial of Care Order as the

reason for suspending surgeries. *Id.*

Corewell Health, a medical system in Michigan, announced that it will no longer allow

minors seeking gender-affirming care to start new hormone therapy regimens. Georgea Kovanis,

*Corewell Becomes First Michigan Health System to Limit Gender-Affirming Care for Minors*,

DETROIT FREE PRESS (Feb. 7, 2025, 1:04 PM).[10]

---

[6]   https://www.latimes.com/california/story/2025-02-04/childrens-hospital-to-stop-initiating-hormonal-therapy-for-trans-patients-under-19

[7]  https://www.latimes.com/california/story/2025-02-21/chla-lift-pause-hormonal-therapy-transgender-youth

[8]   https://www.kuow.org/stories/seattle-children-s-halts-gender-affirming-surgeries-after-executive-order-threatens-loss-of-federal-funds

[9]  https://wgntv.com/news/chicago-news/protest-against-lurie-children-hospital/

[10]          https://www.freep.com/story/news/health/2025/02/07/transgender-minors-michigan-corewell-beaumont-trump/78307419007/

VCU Health, Children's Hospital of Richmond "suspended gender-affirming medications and gender-affirming surgical procedures for patients under 19 years old in response to" the Denial of Care Order. *Transgender*, CHILDREN'S HOSP. OF RICHMOND AT VCU (Feb. 1, 2025).[11] UVA Health initially "suspended gender-affirming care services for young people" because of the Denial of Care Order but has resumed providing those services following this Court's temporary restraining order, demonstrating the vital need for this Court to extend the TRO into a longer lasting preliminary injunction. *Gender Health Services Impacted by Executive Order*, UVA HEALTH (updated Feb. 21, 2025).[12]

NYU Langone Health in New York has begun to postpone planned procedures and cancel appointments for patients scheduled to receive puberty blocker medications. Joseph Goldstein, *Trans Youth Are Rattled by Efforts to Ban Gender Care. So Are Hospitals*, N.Y. TIMES (Feb. 8, 2025);[13] Joseph Goldstein, *N.Y. Hospital Stops Treating 2 Children After Trump's Trans Care Order*, N.Y. TIMES (Feb. 1, 2025).[14] New York Presbyterian has begun scrubbing references to gender-affirming care for young people from its website. *See* Rosalind Adams & Claudia Irizarry Aponte, *NY-Presbyterian Removes Transgender Youth Care From Website After Trump Order*, THE CITY (Feb. 3, 2025 5:08 PM).[15]

Children's Hospital Colorado has suspended all gender affirming treatment, including puberty blockers, for patients under 19. John Daley, *Children's Hospital Colorado Suspends Gender Affirming Treatment, Following White House Executive*

---

[11] https://www.chrichmond.org/services/transgender/

[12] https://childrens.uvahealth.com/services/transgender-youth-health

[13] https://www.nytimes.com/2025/02/08/nyregion/nyc-transgender-care-executive-order.html

[14] https://www.nytimes.com/2025/02/01/nyregion/nyu-langone-hospital-trans-care-youth html

[15] https://www.thecity.nyc/2025/02/03/new-york-presbyterian-removes-transgender-medical-care-trump/

*Order*, COLORADO PUBLIC RADIO (Feb. 5, 2025).[16] In a statement, it explained that

it was suspending care to comply with the Denial of Care Order, which "threatens

Children's Hospital Colorado's ability to receive federal health care funds." *Id.*

UCHealth and Denver Health, also in Colorado, announced that they will no longer offer

gender-affirming surgeries to those under age 19. Melissa Reeves & Jaleesa Irizarry, *UCHealth

and Denver Health Pause Gender-Affirming Care for Trans Youth*, 9NEWS (Jan. 31, 2025).[17] In

a statement, Denver Health said that it "recognize[s] this order will impact gender-diverse youth,

including increased risk of depression, anxiety and suicidality." *Id.* But, it explained:

> The [Denial of Care Order] includes *criminal and financial consequences* for those
> who do not comply, including placing participation in federal programs including
> Medicare, Medicaid and other programs administered by HHS at risk. These
> programs represent a significant portion of Denver Health's funding, and the
> executive order specifically states that should we not comply, our participation in
> these programs is at risk. *The loss of this funding would critically impair our ability
> to provide care for the Denver community.*

*Id.* (emphasis added).

Confronted with that same untenable situation, other hospitals, health systems, clinics,

and providers have likely already made similar choices to limit or halt life-saving care for

transgender and gender fluid youth. Meanwhile, the Centers for Disease Control and Prevention

("CDC") already sought to terminate at least one grant that was intended to support a transgender

health and social services program due to the Trump Administration's discriminatory directives

on transgender rights. *See infra* at 11 (discussing St. John's Community Health in Los Angeles).

Although the clinic pushed back, its President and CEO emphasized in a sworn declaration that

the termination of that grant could trigger layoffs and prevent the provision of "services to the

---

[16]    https://www.cpr.org/2025/02/05/childrens-hospital-colorado-suspends-gender-affirming-treatment-following-white-house-executive-order/

[17]    https://www.9news.com/article/news/local/local-politics/denver-health-pauses-genderaffirming-surgeries-minors-federal-funding/73-e61f598b-e32d-474e-94b4-4b11d4c5c8af

patients who receive care through this funding." *New York v. Trump*, No. 1:25-cv-00039-JJM-PAS (Mangia Declaration, Feb. 5, 2025), ECF No. 68-38 ¶12. Day by day, more healthcare providers are likely to succumb to the unlawful coercion imposed by these Orders and the Trump Administration's other efforts to eliminate the existence of transgender people in this country. Indeed, that is the Orders' express purpose.

Moreover, even at hospitals and healthcare institutions that have not stopped providing gender-affirming care, individual doctors and other providers are living every day under the threat of criminal prosecution for providing life-saving care to their patients. *See Washington*, 2025 WL 509617, at *4, 12-14 (discussing section 8(a) of the Denial of Care Order, which purports to criminalize gender affirming care treatments). Considering the President's sweeping attacks on transgender people, *see infra*, and reading the Orders in their entirety, providers face a very real threat of prosecution right now. *See Washington*, 2025 WL 509617, at *4, 12-14. The Denial of Care Order's message to providers could not be clearer: If you provide gender-affirming care—which the Order heartlessly defines as "chemical and surgical mutilation"—you risk criminal prosecution. This is an emergency. Healthcare providers "should not be required to await and undergo a criminal prosecution as the sole means of seeking relief." *Doe v. Bolton*, 410 U.S. 179, 188 (1973), *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022). A preliminary injunction protecting all transgender youth, their parents, and their healthcare providers across the nation is necessary now.

## II.     The Orders Are Just Two of an Onslaught of Blatantly Unlawful and Unconstitutional Executive Orders That the Courts Have a Duty to Enjoin.

The flagrantly unconstitutional Orders at issue here are part of a concerted effort by this Administration to expressly discriminate against transgender individuals, deny their existence, and exclude them from public life. *See* ECF 1 ¶¶72-76; *see also* Scott Skinner-Thompson,

*Donald Trump's Executive Orders Aim to Create Jim Crow for Trans People*, SLATE (Feb. 3,

2025) (citing Trump Administration actions that include "attempting to ban thousands of trans

people who put their lives on the line for this country from continued military service, weakening

American security in the process; forbidding transgender people from having accurate

identification documents like passports; purporting to implement a nationwide prohibition

on lifesaving medical care for transgender youth; weaponizing the Department of Education

to investigate high schools that provide gender neutral bathrooms; endangering transgender

inmates by imprisoning them inconsistent with their gender identity; trying to erase every single

federal acknowledgment of and protection for transgender people; and, most recently,

criminalizing the support of transgender students by teachers").[18]

     The Orders are also two of many that violate the Separation of Powers by usurping

Congress's appropriations power and attempting to deny federal funding by fiat, with no

statutory basis. *See generally* Justin Jouvenal and Ann E. Marimow, *Tracking Trump's Wins and

Losses in Court Cases Over His Executive Orders*, WASHINGTON POST (updated Feb. 23,

2025, 1:58 p.m. EST) (tracking court challenges to unlawful executive actions).[19]

     This President has shown no regard for the Constitution. It is the fundamental duty of the

federal courts to protect the Constitution against such assaults. *Ex parte Quirin*, 317 U.S. 1, 19,

*modified sub nom. U.S. ex rel. Quirin v. Cox*, 63 S. Ct. 2 (1942) (courts have a duty "to preserve

unimpaired the constitutional safeguards of civil liberty"). "[I]t is emphatically the province and

duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch)

137, 177 (1803). "This 'duty will sometimes involve the resolution of litigation challenging the

---

[18] https://slate.com/news-and-politics/2025/02/donald-trump-anti-trans-executive-orders-jim-crow html

[19] https://www.washingtonpost.com/politics/2025/02/07/trump-lawsuits-executive-orders-actions-legal-challenges/

constitutional authority of one of the three branches, but courts cannot avoid their responsibility.'" *Int'l Refugee Assistance Project v. Trump*, 857 F.3d 554, 587 (4th Cir.), *vacated and remanded sub nom. on other grounds*, 583 U.S. 912 (2017) (quoting *Zivotofsky ex rel. Zivotofsky v. Clinton*, 566 U.S. 189, 196 (2012)); *see also INS v. Chadha*, 462 U.S. 919, 943 (1983) ("Resolution of litigation challenging the constitutional authority of one of the three branches cannot be evaded by courts because the issues have political implications …."); *Washington v. Trump*, 847 F.3d 1151, 1161 (9th Cir. 2017).

The Orders are just two in a series of discriminatory executive actions attacking transgender people, and they must be read within that larger context. On January 20, 2025, the President signed the Gender Identity Order, declaring it "the policy of the United States to recognize two sexes, male and female," directing federal agencies to effectively erase the existence of transgender and gender fluid individuals and "ensure grant funds do not promote gender ideology," and, among other things, directing the Bureau of Prisons ("BOP") to house transgender prisoners in prisons consistent with their biological sex rather than those that match their gender identity, and forbidding BOP from providing prisoners any gender-affirming care. Gender Identity Order §§1-4. The District Court for the District of Columbia held that the Order likely violated the Eighth Amendment and would cause irreparable harm to transgender prisoners and issued a preliminary injunction barring the Administration from transferring the plaintiff transgender prisoners or denying them gender-affirming care. *Doe v. McHenry*, No. 1:25-cv-286-RCL (D.D.C. Feb. 18, 2025) (Lamberth, J.), ECF No. 44; *see also id.* (D.D.C. Feb. 4, 2025), ECF No. 23 at 8 (granting temporary restraining order). The District of Massachusetts issued a similar TRO preventing the transfer of a transgender woman to a men's prison. *Moe v. Trump*, No. 1:25-cv-10195-GAO (D. Mass. Jan. 26, 2025) (O'Toole, J.), ECF No. 12 at 1.

That Gender Identity Order has also caused other harms. As noted above, the CDC terminated a $1.6 million grant for an HIV prevention program to support transgender health and services received by more than 500 people each year at St. John's Community Health, one of the largest free and reduced-cost providers in Los Angeles. Kristen Hwang, *LA Clinics Lose Funding for Transgender Health Care as Trump Executive Orders Take Hold*, CALMATTERS (Feb. 4, 2025);[20] Cheryl Clark, *Hospitals Fret Executive Orders Targeting Trans Youth*, MEDPAGE TODAY (Feb. 6, 2025);[21] *see New York v. Trump*, No. 1:25-cv-00039-JJM-PAS (Mangia Declaration, Feb. 5, 2025), ECF No. 68-38 (declaration from St. John's Community Health President and CEO describing harms that would result from this termination of funding).

In response to the Gender Identity Order, the CDC and the Food and Drug Administration also removed a broad range of health-related data and other information from their websites. *Doctors for America v. Office of Personnel Management*, No. 1:25-cv-00322-JDB (D.D.C. Feb. 4, 2025), ECF No. 1 ¶¶1, 14-18. To prevent irreparable harm, the District Court for the District of Columbia granted a temporary restraining order requiring defendants to restore their websites. *Id.* (D.D.C. Feb. 11, 2025) (Bates, J.), ECF No. 11.

On January 28, 2025, the President signed the Denial of Care Order, which directs federal agencies to withhold federal funds from institutions offering gender affirming care to patients under the age of 19. Denial of Care Order §4. The Denial of Care Order also directs the Attorney General to criminally prosecute healthcare providers. *Id.* §8. The District Court for the Western District of Washington issued a temporary restraining order enjoining both Sections 4 and 8 of the Denial of Care Order. *Washington v. Trump*, 2:25-cv-00244-LK (W.D. Wash. Feb. 16, 2025)

---

[20] https://calmatters.org/health/2025/02/trump-executive-order-transgender-health/

[21] https://www.medpagetoday.com/special-reports/exclusives/114109

(King, J.), ECF No. 161 (available at 2025 WL 509617). The court concluded that the Denial of

Care Order likely "amount[ed] to an end-run around the separation of powers," likely violated

the Fifth Amendment, and likely violated the Tenth Amendment. *Id.*

The Complaint cites other Executive Orders attacking transgender individuals, ECF 1

¶¶73-76, including as just one other example an order banning transgender people from serving

in the military. In a recent hearing before the District Court for the District of Columbia, a

federal judge described that order as reflecting "unadulterated animus" and as being "arguably

rampant with animus." Devan Cole, *Executive Order Banning Trans Service Members Has*

*'Unadulterated Animus' Toward Member of the Community, Judge Says*, CNN (Feb. 18,

2025);[22] Rebecca Kheel, *"Unadulterated Animus": Judge Tears into Trump Administration at*

*Hearing on Transgender Military Ban*, MILITARY.COM (Feb. 18, 2025).[23]

The President's attacks on transgender individuals are part of a larger effort to disregard

constitutional mandates and to impose discrimination against other vulnerable populations as

official federal government policy. On January 20, 2025, the President signed an Executive

Order purporting to end birthright citizenship. Exec. Order 14160, *Protecting the Meaning and*

*Value of American Citizenship*, 90 Fed.Reg. 8449 (Jan. 20, 2025). This Court (Boardman, J.), the

Western District of Washington, the District of New Hampshire, and the District of

Massachusetts each separately enjoined that order, finding that plaintiffs were likely to succeed

on the merits of their claims, that the order was facially unconstitutional, and that plaintiffs

would suffer irreparable harm without preliminary relief. *See generally Casa, Inc. v. Trump*,

8:25-cv-00201-DLB (D. Md. Feb. 5, 2025) (Boardman, J.), ECF No. 66 at 1-2 ("The Executive

---

[22] https://www.cnn.com/2025/02/18/politics/transgender-service-members-hearing/index.html

[23]        https://www.military.com/daily-news/2025/02/18/unadulterated-animus-judge-tears-trump-administration-hearing-transgender-military-ban html

Order contradicts the plain language of the Citizenship Clause of the Fourteenth Amendment and conflicts with binding Supreme Court precedent.") (citation omitted); *Washington v. Trump*, 2:25-cv-00127-JCC (W.D. Wash. Feb. 6, 2025) (Coughenour, J.), ECF No. 114 at 6, 10 ("The Plaintiffs are likely to succeed on their claim that the Order violates the Citizenship Clause of the Fourteenth Amendment (and, in turn, the INA). … The Plaintiff States have also shown that they are likely to suffer irreparable economic harm in the absence of preliminary relief."); *New Hampshire Indonesian Cmty. Support v. Trump*, 1:25-cv-00038-JL-TSM (D.N.H. Feb. 10, 2025) (Laplante, J.), ECF No. 77; *Doe v. Trump*, 1:25-cv-10135-LTS (D. Mass. Feb. 13, 2025) (Sorokin, J.), ECF No. 47 (granting preliminary injunction).

Just days ago, this Court (Abelson, J.) preliminarily enjoined portions of two other Executive Orders that the President issued in his first two days in office which sought to eliminate diversity, equity, and inclusion efforts by federal contractors. *Nat'l Assoc. of Diversity Officers in Higher Educ.*, 1:25-cv-00333-ABA (D. Md. Feb. 21, 2025) (Abelson, J.), ECF No. 44. The court held that portions of those Executive Orders likely violate the First and Fifth Amendments. *Id.*

Not only are the Orders here part of a larger discriminatory attack on transgender people and other vulnerable populations, but they are also part of the President's concerted efforts to usurp Congress's Spending Clause power and claim unilateral power for the Executive Branch, in blatant violation of the Constitution. On January 27, 2025, the Acting Director of the Office of Management and Budget ("OMB") issued a memorandum directing federal agencies to analyze all programs, projects, and activities that might be implicated by President Trump's recent executive orders. *Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, No. 1:25-cv-00239-LLA (D.D.C. Feb. 3, 2025) (AliKhan, J.), ECF No. 30 at 1-2. District Courts for the District of

Columbia and the District of Rhode Island both granted TROs against the funding pause. *Id.* at 3, 29-30; *New York v. Trump*, No. 1:25-cv-00039-JJM-PAS (D.R.I. Jan. 31, 2025) (McConnell, J.), ECF No. 50. One court concluded that the funding pause was likely arbitrary and capricious, in violation of the Administrative Procedure Act. *Nat'l Council of Nonprofits*, ECF No. 30 at 23-26. The other concluded that the pause, among other infirmities, would likely "violate the separation of powers." *New York*, ECF No. 50 at 5-6 ("The Executive Branch has a duty to align federal spending and action with the will of the people as *expressed through congressional appropriations*, not through 'presidential priorities.'") (emphasis in original). The same fundamental constitutional violations pervade the Orders here.

Then, the District of Rhode Island issued another order finding that despite the "plain language" of the TRO prohibiting all categories of pauses or freezes in disbursements on the basis of the challenged executive orders, "Defendants in some cases have continued to improperly freeze federal funds and refused to resume disbursement of appropriated federal funds." *New York v. Trump*, No. 1:25-cv-00039-JJM-PAS (D.R.I. Feb. 10, 2025), ECF No. 96 at 3. In other words, the Court found that the Administration had directly defied a federal court order and issued another order demanding compliance. *Id.* at 4-5.

The federal courts must act to prevent the President from violating the Constitution. Lives and health are at stake. Healthcare providers and systems are at risk. And our basic constitutional order is under threat. *See Bowsher v. Synar*, 478 U.S. 714, 722 (1986) ("[T]here can be no liberty where the legislative and executive powers are united in the same person ….") (quoting The Federalist No. 47, p. 325 (J. Cooke ed. 1961)).[24]

---

[24] The cases cited here only scratch the surface of this President's sweeping unlawful conduct. As yet more examples, the Southern District of New York issued a preliminary injunction barring the newly created Department of Government Efficiency ("DOGE") from accessing sensitive personal data stored by the Department Treasury. *New*

**CONCLUSION**

For all these reasons, Plaintiffs' motion for a preliminary injunction should be granted, to protect transgender and gender fluid youth, their families, and their healthcare providers from ongoing, serious irreparable harm caused by Defendants' flagrantly unconstitutional and discriminatory Executive Orders.

DATED this 24th day of February, 2025.    Respectfully submitted,

/s/ Kathleen Keller
Kathleen Keller (Fed. Bar No. 19085)
BREDHOFF & KAISER P.L.L.C.
805 15th Street N.W.
Suite 1000
Washington D.C. 20005
Telephone: (202) 842-2600
Fax: (202) 842-1888
kkeller@bredhoff.com

Matthew J. Murray (CA Bar 271461)*
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
(415) 421-7151
mmurray@altber.com

*Attorneys for Amicus Communications Workers of America*

*Pro Hac Vice application pending

---

*York v. Trump*, No. 1:25-cv-01144-JAV (S.D.N.Y. Feb. 21, 2025) (Vargas, J.), ECF No. 76; *see also id.* (S.D.N.Y. Feb. 8, 2025) (Engelmayer, J.), ECF No. 6 (granting temporary restraining order and ordering DOGE to "immediately destroy any and all copies of material downloaded from the Treasury Department's records and systems"). The District Court for the District of Columbia issued a temporary restraining order reinstating the plaintiff, Cathy Harris, as Chairman of the Merit Systems Protection Board following her unlawful termination at the President's direction. *Harris v. Bessent*, No. 1:25-cv-00412-RC (D.D.C. Feb. 18, 2025) (Contreras, J.), ECF No. 9; *see also Dellinger v. Bessent*, 1:25-cv-00385-ABJ (D.D.C. Feb. 12, 2025) (Jackson, J.), ECF No. 14 (granting temporary restraining order reinstating plaintiff as Special Counsel of the Office of Special Counsel). The District Court for the District of Columbia also issued a temporary restraining order enjoining a pause in foreign aid authorized by Executive Order 14169. *AIDs Vaccine Advocacy Coalition v. Department of State*, No. 1:25-cv-00400-AHA (D.D.C. Feb. 13, 2025) (Ali, J.), ECF No. 17 (concluding challenged portions of Executive Order likely unlawful under APA).

**CERTIFICATE OF SERVICE**

I hereby certify that on February 24, 2025, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to

counsel of record.

<div style="margin-left:40%">

*/s/* Kathleen Keller
Kathleen Keller

</div>