# Exhibit B

FILED: February 28, 2025

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 25-1153
(8:25-cv-00201-DLB)

_____

CASA, INC.; ASYLUM SEEKER ADVOCACY PROJECT, INC.; MARIBEL, Individually and as next friend to her future child, c/o CASA, Inc.; JUANA, Individually and as next friend to her future child, c/o CASA, Inc.; TRINIDAD GARCIA, Individually and as next friend to her future child, c/o Asylum Seeker Advocacy Project; MONICA, Individually and as next friend to her future child, c/o Asylum Seeker Advocacy Project; LIZA, Individually and as next friend to her future child, c/o Institute for Constitutional Advocacy and Protection,

       Plaintiffs – Appellees,

   v.

DONALD J. TRUMP, In his official capacity as President of the United States, c/o Attorney General of the United States; SECRETARY OF THE UNITED STATES DEPARTMENT OF STATE, In their official capacity; ATTORNEY GENERAL OF THE UNITED STATES, In their official capacity; SECRETARY OF THE UNITED STATES DEPARTMENT OF HOMELAND SECURITY, In their official capacity, c/o Office of the General Counsel; DIRECTOR OF UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, In their official capacity, c/o Office of the Chief Counsel; COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, In their official capacity, c/o Office of the Chief Counsel; UNITED STATES OF AMERICA, c/o Attorney General of the United States,

       Defendants – Appellants.

_____

MEMBERS OF CONGRESS; THE STATE OF TENNESSEE; AMERICA'S FUTURE; CITIZENS UNITED; CONSERVATIVE LEGAL DEFENSE AND EDUCATION FUND; GUN OWNERS FOUNDATION; GUN OWNERS OF AMERICA, INC.; LEADERSHIP INSTITUTE; U.S. CONSTITUTIONAL RIGHTS AND LEGAL

DEFENSE FUND

Amici Supporting Appellants.

O R D E R

The government seeks a partial stay of the district court's February 5, 2025, preliminary injunction in this matter. As the parties agree, we consider that request under the traditional factors laid out in *Nken v. Holder*, 556 U.S. 418 (2009). We find that the government has not shown an entitlement to a stay pending appeal and accordingly deny its motion.

Our court has reviewed and approved so-called "universal" or "nationwide" injunctions in the past. *See Roe v. Dep't of Def.*, 947 F.3d 207, 231–33 (4th Cir. 2020); *HIAS, Inc. v. Trump*, 985 F.3d 309, 326–27 (4th Cir. 2021). As we have explained, a district court has "wide discretion" in fashioning the scope of a preliminary injunction, and that discretion includes, in appropriate cases, the entry of "an injunction extending relief to those who are similarly situated to the litigants." *Roe*, 947 F.3d at 231–32. The burden is on the government to show that it is likely to prevail in its claim that the district court abused its discretion here, and that the equities favor an atypical "intrusion" into the ordinary judicial process. *Nken*, 556 U.S. at 427, 433–34. In our view, the government cannot meet that burden.

We join the Ninth Circuit in finding that the government has not made a "strong showing" that it is "likely to succeed on the merits" of its argument against universal

Case 8:25-cv-00337-BAH   Document 112-2   Filed 03/02/25   Page 4 of 11

injunctions. *See Washington v. Trump*, 2025 WL 553485, at *1 (9th Cir. Feb. 19, 2025) (quoting *Nken*, 556 U.S. at 434) (denying similar stay request). Our circuit precedent forecloses the government's position that injunctions extending relief to those "similarly situated" to the plaintiffs are "categorically beyond the equitable power of district courts." *Roe*, 947 F.3d at 232; *see also HIAS*, 985 F.3d at 326. And that precedent is based on our understanding that the Supreme Court, too, has "affirmed the equitable powers of district courts, in appropriate cases, to issue nationwide injunctions extending relief to those who are similarly situated to the litigants." *Roe*, 947 F.3d at 232 (citing *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 580 (2017) (per curiam)).

We are of course aware of separate writings by Supreme Court Justices, emphasized by the government, that express concerns about the propriety of universal injunctions and an interest in taking up that question. But notwithstanding these reservations, the Supreme Court has allowed most universal injunctions to remain in effect during the course of litigation, *see, e.g.*, *Biden v. Nebraska*, 143 S. Ct. 477 (Mem.) (2022), even in cases in which the Court has ultimately reversed on the merits, *see Biden v. Texas*, 12 S. Ct. 926 (Mem.) (2021); *United States v. Texas*, 143 S. Ct. 51 (Mem.) (2022). No decision of the Supreme Court has superseded our precedent in this area, and we have no reason to think the Court will soon announce a change in course.

We agree with the government that a court must "mold its decree to meet the exigencies of the particular case," and ensure that a preliminary injunction is not "more burdensome to the defendant than necessary" to provide complete relief to the plaintiffs. *See Roe*, 947 F.3d at 231 (internal quotation marks omitted). But to the extent the

3

government argues that the district court abused its discretion in fashioning this universal injunction, in particular, we think that claim, too, is unlikely to succeed. As the district court identified, *see CASA, Inc. v. Trump*, No. 25-cv-00201-DLB, 2025 WL 545840, at *1 (D. Md. Feb. 18, 2025), this case falls within the parameters for universal injunctions we have outlined in our precedent: It enjoins a "categorical policy"; the "facts would not require different relief for others similarly situated" to the plaintiffs; and limiting the injunction would make the citizenship of babies turn on the happenstance of their parents' membership in the plaintiff organizations, causing "inequitable treatment" in an area in which uniformity is needed. *See HIAS*, 985 F.3d at 326–27; *Roe*, 947 F.3d at 323–33; *see also* U.S. Const. art. I, § 8, cl. 4 (empowering Congress to "establish an uniform Rule of Naturalization"). The district court also carefully explained why an injunction limited to the parties – including organizations with hundreds of thousands of members nationwide – would be unworkable in practice and thus fail to provide complete reliefs to the plaintiffs. *CASA*, 2025 WL 545840, at *1 & n.2; *see Nebraska v. Biden*, 52 F.4th 1044, 1088 (8th Cir. 2022) (per curiam). "Crafting a preliminary injunction is an exercise of discretion and judgment," *see Int'l Refugee Assistance Project*, 582 U.S. at 579, and we do not think the government can make the requisite "strong showing," *Nken*, 556 U.S. at 434, that the district court abused its discretion here.

Nor has the government shown that the equities favor the granting of a stay. For well over a century, the federal government has recognized the birthright citizenship of children born in this country to undocumented or non-permanent immigrants, a practice that was unchallenged until last month. The government has not shown that it will be

4

harmed in any meaningful way if it continues to comply, for the pendency of its appeal, with that settled interpretation of the law and consistent executive branch practice. *See Washington*, 2025 WL 553485, at *2 (Forrest, J., concurring) (explaining that there is no "obvious" need for stay relief where "it appears that the exception to birthright citizenship urged by the Government has never been recognized by the judiciary, *see United States v. Wong Kim Ark*, 169 U.S. 649, 693 (1899), and where executive-branch interpretations before the challenged executive order was issued were contrary, *see, e.g.*, Walter Dellinger, Assistant Attorney General, Office of Legal Counsel, *Legislation Denying Citizenship at Birth to Certain Children Born in the United States*, 19 O.L.C. 340, 340-47 (1995)"). It may sometimes be hard to identify which stays disrupt the status quo and are thus disfavored, *see Labrador v. Poe ex. rel. Poe*, 144 S. Ct. 921, 930 (Mem.) (2024) (Kavanaugh, J., concurring), but the status quo in this case is clear, and adding a bit more time to its century-plus pedigree will not impose any substantial harm on the government.

       Second, it is notable that the government is not prepared to argue that it will likely prevail on the merits of the Executive Order itself. We are aware of no case – and the government has not cited one – in which a court has stayed a preliminary injunction of a policy, already found likely unlawful, in which the movant did not argue for the policy's legality. Under these circumstances, especially, we are hesitant to disturb a preliminary injunction that maintains the status quo while the lawfulness of the Executive Order is litigated.

       Finally, we agree with the district court that the public interest favors its preliminary injunction. *CASA*, 2025 WL 408636, at *16. It is hard to overstate the confusion and

5

upheaval that will accompany any implementation of the Executive Order. Today, virtually every child born in the United States becomes a citizen at birth – allowing us to prove our citizenship with our birth certificates, which identify our place of birth but not the citizenship status of our parents. The Executive Order will do away with that long-standing practice. Even for children born to two citizen parents, a standard birth certificate will no longer suffice to prove citizenship – not under the Executive Order, and not for any other purpose. Existing administrative systems will fail, states and localities will bear the costs of developing new systems for issuing birth certificates and verifying citizenship, and anxious parents-to-be will be caught in the middle. *See id.*; Br. for Local Gov'ts as Amici Curiae at 10–12, No. 25-cv-00201-DLB, ECF No. 37 (Jan. 29, 2025). The public interest would not be served by courting this chaos while we take up an appeal of an Executive Order that the district court already has found is very likely unconstitutional.

      The motion for stay pending appeal is

*DENIED*.

      Entered at the direction of Judge Harris with the concurrence of Judge Gregory. Judge Niemeyer dissents from the court's order.

For the Court

/s/ Nwamaka Anowi, Clerk

NIEMEYER, Circuit Judge, dissenting:

I respectfully dissent from the majority's order denying the government's motion for a partial stay of the district court's preliminary injunction. The government does not seek a stay with respect to the injunction's provision of relief to the parties in this case. It only seeks to stay the effort by the district court to impose its injunction nationwide to afford relief to persons beyond the District of Maryland. By its terms, the district court's order seeks to apply its injunction for the benefit of hundreds of thousands of individuals "throughout these United States." In effect, therefore, the government simply seeks to cabin the district court's injunction to the parties in the District of Maryland. In this posture, the government does not address the merits of the plaintiffs' case, and I express no view here on the merits.

The majority's order denying the government's motion focuses almost all of its discussion to whether the government has satisfied the criteria for a stay outlined in *Nken v. Holder*, 556 U.S. 418, 426 (2009). That analysis prescribes a look at the merits of the case — even though they have not yet been briefed before us — to assess the government's likelihood of success. But the merits are not before us, even for a quick look. At this stage, the government seeks *only* to restrict the scope of the preliminary injunction, which purports to cover every person and every district court in the country. It states, "This motion does not require the Court to address the merits. For the present, the government asks only that the Court stay the preliminary injunction to the extent it sweeps beyond the

7

sixteen individuals whose claims are identified in the complaint and whose relief is not contested in this motion."

The President issued Executive Order 14160 construing the Citizenship Clause of the Fourteenth Amendment. Stated broadly, the Executive Order construes specific limiting language of the Citizenship Clause — which applies the Clause to persons "subject to the jurisdiction" of the United States — to conclude that it does not extend citizenship to children born in the United States of aliens illegally present in the United States or of aliens only temporarily present in the United States. U.S. Const. amend XIV, § 1. Whether the Order's interpretation is correct is yet to be briefed in this case and determined.

The plaintiffs in this case commenced this action to challenge the Executive Order's interpretation and claim that they will suffer "irreparable harm" from its implementation that can only be redressed by preliminary and permanent injunctive relief. The district court granted the plaintiffs' motion for a preliminary injunction, but it provided relief not only to the plaintiffs but also to everyone in the nation similarly situated by categorically enjoining the defendants from implementing and enforcing the Executive Order. The government has appealed, and the issue now is not whether the district court was correct in entering a preliminary injunction. Rather, it is whether the court was entitled, in the circumstances of this case, to extend its injunction to apply "throughout these United States" — to persons not before the court nor identified by the court.

I would grant the government's modest motion, which seeks only to cabin the order's inappropriate reach.

8

The judicial unseemliness of such a broad extension of judicial power is highlighted by the fact that within "these United States" — the coverage of the district court's injunction — at least four cases in other United States District Courts are addressing similar challenges to Executive Order 14160. *See Washington v. Trump*, No. 2:25-cv-00127-JCC, in the Western District of Washington; *New Jersey v. Trump*, No. 1:25-cv-10139-LTS, in the District of Massachusetts; *Bell v. Trump*, No. 1:25-cv-10135-LTS, in the District of Massachusetts; and *New Hampshire Indonesian Community Support v. Trump*, No. 1:25-cv-00038-JL-TSM, in the District of New Hampshire. And there may be others. The judges in these four, however, have all issued injunctions against Executive Order 14160. Thus, the district court's order in this case could have the effect of preempting or at least interfering with the orders in these other districts. It implicates unnecessarily potentially conflicting orders or reasoning, claims preclusion, res judicata, and other similar principles that order the work of different courts. Moreover, the orders in all four of these cases have been or will be appealed to the appropriate court of appeals, which are or will be considering the same issues that are presented to us here. As a matter of order and equity, it is simply presumptuous and jurisdictionally messy for one district court to issue an injunction that covers the jurisdiction of other district courts and courts of appeals, which are considering the same issues. And for good reason, the Supreme Court has demonstrated grave concern generally over district courts' issuing national injunctions, as the government has demonstrated at greater length in its papers. *See e.g.*, *Labrador v. Poe ex rel. Poe*, 144 S. Ct. 921 (2024) (mem.).

While a broad injunction having de facto national effect might be appropriate in some circumstances, it is not so here, in my view. The specifically identified plaintiffs here claim harm that can only be redressed by injunctive relief, and the other district courts across the country are likewise addressing similar claims of harm.

At bottom, I would grant the partial stay requested, which is modest, and proceed to receive the briefs of the parties on the merits and hear oral argument in furtherance of our role to review the district court's injunction on the merits.