IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| PFLAG, INC., ET AL., | * | |
| Plaintiffs, | * | |
| v. | * | Civil No. 25-337-BAH |
| DONALD J. TRUMP ET AL., | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM AND ORDER

Pending before the Court is Plaintiffs' emergency motion to enforce the Court's March 4, 2025, preliminary injunction (the "Motion"). ECF 118.[1] Defendants oppose the Motion. ECF 120. Plaintiffs filed a reply. ECF 122. The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). Accordingly, for the reasons stated below, Plaintiffs' Motion is **DENIED** without prejudice.

### I.   BACKGROUND

On March 4, 2025, this Court issued a preliminary injunction, enjoining all Defendants, except President Trump,[2] from implementing Section 3(g) of Executive Order 14,168 and Section 4 of Executive Order 14,187 by "conditioning, withholding, or terminating federal funding" for

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

[2] For convenience, the Court refers to the parties subject to the preliminary injunction as "Defendants" throughout this Memorandum and Order.

any healthcare entity or medical provider based on the entity or provider's provision of "gender-affirming care for patients under nineteen."[3] ECF 116 (preliminary injunction order), at 1–2.

On March 7, 2025, Plaintiffs filed the instant Motion. ECF 118. Plaintiffs aver that Defendants violated the preliminary injunction "by issuing notices to covered entities and federal funding recipients, renewing previous threats to withhold federal funds." *Id.* at 2. Plaintiffs attached a series of notices sent by subagencies of the Department of Health and Human Services ("HHS") on March 5 and March 6, 2025.[4] *See* ECF 118-3 (Notice from Centers for Medicare & Medicaid Services); ECF 118-4 (Notice from Health Resources & Services Administration ("HRSA")); ECF 118-5 (Notice from Substance Abuse and Mental Health Services Administration ("SAMHSA")). These notices alerted federal funding recipients that the agencies may "begin taking steps to appropriately update [] policies to protect children from chemical and surgical mutilation," "review [] policies, grants, and programs in light of the concerns discussed in the QSSAM [(Quality and Safety Special Alert Memo)[5]]," and "consider re-scoping, delaying, or potentially cancelling new grants in the future depending on the nature of the work and any future policy change(s)." ECF 118, at 2–3 (quoting ECFs 118-3, 118-4, and 118-5).

---

[3] The Court assumes the parties' familiarity with the underlying facts of the case and thus does not reiterate those facts here. Defendants have appealed the issuance of the preliminary injunction. *See* ECF 132 (Notice of Interlocutory Appeal).

[4] The Court notes that on March 10, 2025, pursuant to the Court's order, counsel for Defendants sent a "written notice [] to the Defendants of the preliminary injunction, with the instruction that the [written notice] should be disseminated to employees, contractors, and grantees as applicable." ECF 121, at 1. The written notice, ECF 121-1, advised the relevant parties that a preliminary injunction had been entered and summarized the key terms to assist with compliance.

[5] Plaintiffs describe a QSSAM as a "type of memo designed to serve as reminders of existing obligations or requirements." ECF 118-1, at 6 (quotation marks and citation omitted). Defendants state that "QSSAMs are issued as part of CMS's quality, safety, and oversight functions." ECF 120, at 4 (citation omitted).

Plaintiffs contend that "[e]ach of these notices violates the preliminary injunction" by "scaring hospitals into once again stopping care (or declining to restart care) by repeating the same threats in the unlawful Executive Orders." ECF 118-1, at 3. In response, Defendants attest that the cited notices "merely inform interested parties of HHS's concerns about the proliferation in use of puberty blockers, cross-sex hormones, and surgery to treat children with gender dysphoria and certain research and data on the potentially harmful effects of such interventions." ECF 120, at 2. Defendants expressly deny that the notices "'condition[], withhold[], or terminat[e]' any federal funding" or otherwise represent "a harbinger of future agency action" that will do the same "'based on the fact that a healthcare entity or health professional provides gender-affirming medical care to a patient under nineteen.'" *Id.* (quoting ECF 116, at 1–2). Defendants argue that Plaintiffs' Motion instead "seek[s] an expansion of the preliminary injunction to prohibit agencies from even considering any policies or actions pursuant to their existing authorities that might be related to the issues addressed in the executive orders" and assert that "[t]here is no basis for such relief." *Id.* Plaintiffs dispute Defendants' characterization of the notices as "internal policy consideration[s]" and construe them instead as "overt threats by Defendants that federal funding recipients risk losing their federal funding if they provide gender affirming medical care to a patient under the age of nineteen." ECF 122, at 1. Plaintiffs do not point to any recipients of federal funds who have ceased providing gender-affirming care to minors on account of the cited notices.

## II. ANALYSIS

Plaintiffs argue that the notices "defy both the letter and spirit of this Court's preliminary injunction" and make clear that "Defendants intend to violate this Court's preliminary injunction by implementing, giving effect to, or reinstating under a different name the directives in Section

3

3(g) of Executive Order 14,168 or Section 4 of Executive Order 14,187." ECF 118-1, at 7 (cleaned up). Defendants maintain that the purpose of the notices was to

> express the agencies' concerns about the proliferation in the use of puberty blockers, cross-sex hormones, and surgery to treat children with gender dysphoria; to provide interested parties with research and data on the potentially harmful effects of such interventions; to explain that the agencies intend to undertake a review of their policies, grants, and programs in light of these concerns; and to notify interested parties that the agencies may take action in the future, consistent with applicable law, to protect children from these interventions.

ECF 120, at 11.

At the outset, the Court notes that it "endeavors to zealously protect its own authority." *Washington v. Trump*, Civ. No. 17-0141, 2017 WL 1045950, at *3 (W.D. Wash. Mar. 16, 2017). "The ability to punish disobedience to judicial orders is regarded as essential to ensuring that the Judiciary has a means to vindicate its own authority[.]" *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 796 (1987). However, upon reviewing the information submitted by the parties, the Court finds that Plaintiffs have not demonstrated by clear and convincing evidence that the agencies violated an unequivocal command in the Court's preliminary injunction.[6]

---

[6] Plaintiffs do not seek to hold Defendants in contempt; rather, Plaintiffs seek an order directing Defendants to rescind the notices. ECF 118-1, at 10–11. Even so, Defendants suggest that the clear and convincing evidence standard applicable to motions for civil contempt should apply here. *See* ECF 120, at 6 (citing *In re Gen. Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995)); *In re Gen. Motors Corp.*, 61 F.3d at 258 ("Civil contempt is an appropriate sanction if we can point to an order of this Court which sets forth in specific detail an unequivocal command which a party has violated.") (internal quotation marks and alteration omitted). Plaintiffs have not provided the Court with a particular standard against which the Court should measure Defendants' compliance, though they cite to a case from this District applying the clear and convincing standard in the context of civil contempt. *See* ECF 118-1, at 10 (citing *Schwartz v. Rent-A-Wreck of Am.*, 261 F. Supp. 3d 607, 617 (D. Md. 2017)). In the absence of a different standard proposed by Plaintiffs, the Court finds that the civil contempt standard of clear and convincing evidence provides a useful framework for assessing Plaintiffs' motion to enforce. *See In re Gen. Motors Corp.*, 61 F.3d at 256 ("The burden is on the complainant to prove civil contempt by clear and convincing evidence.").

4

Plaintiffs may well be correct that "[i]f Defendants follow through on their stated intention of 're-scoping, delaying, or potentially cancelling new grants' because an entity provides gender affirming medical care to people under nineteen, those actions [] will violate the preliminary injunction." ECF 118-1, at 8. However, the notices, as currently structured, merely advise grantees that the agencies and sub-agencies will review their policies, grants, and programs and may consider delaying or potentially cancelling new grants in the future. As Defendants point out, "[a] court cannot penalize a party based on speculation that it may violate an injunction through future action[.]" ECF 120, at 10.

In the memorandum opinion accompanying the preliminary injunction order, the Court clarified that "[n]othing in this injunction implicates the 'information-gathering process.'" ECF 115, at 50. As currently fashioned, the notices appear to alert grantees that the agencies are undertaking a review of grants and programs. The Court's preliminary injunction does not prohibit such internal reviews. Additionally, the documents do not commit to any concrete or definitive actions to be taken in the immediate future. *See* ECF 118-3, at 4 ("CMS may begin taking steps to appropriately update its policies to protect children from chemical and surgical mutilation."); ECF 118-4, at 2 ("HRSA will review its policies, grants and programs in light of the concerns discussed in the QSSAM and may begin taking steps in the future to appropriately update its policies to protect children from chemical and surgical mutilation . . . . HRSA may also consider re-scoping, delaying, or potentially cancelling new grants in the future depending on the nature of the work and any future policy change(s) HRSA may make."); ECF 118-5, at 2 ("SAMHSA will review its policies, grants, and programs in light of the concerns discussed in the QSSAM and may begin taking steps in the future to appropriately update its policies to protect children from chemical and surgical mutilation. SAMHSA may also consider re-scoping, delaying, or potentially

5

cancelling new grants in the future depending on the nature of the work and any future policy change(s) SAMHSA may make.").

Plaintiffs sought, and this Court granted, a preliminary injunction enjoining only Section 4 of Executive Order 14,187 and Section 3(g) of Executive Order 14,168. Thus, the relevant portions of the preliminary injunction prohibit covered Defendants "from conditioning, withholding, or terminating federal funding under Section 3(g) of Executive Order 14,168 and Section 4 of Executive Order 14,187, based on the fact that a healthcare entity or health professional provides gender-affirming medical care to a patient under the age of nineteen" and from "tak[ing] any steps to implement, give effect to, or reinstate under a different name the directives in Section 3(g) of Executive Order 14,168 or Section 4 of Executive Order 14,187 that condition or withhold federal funding based on the fact that a healthcare entity or health professional provides gender-affirming medical care to a patient under the age of nineteen." ECF 116 at 1–2. The Court did not prohibit actions taken pursuant to other sources of authority in the Executive Orders, so long as those actions do not violate the enjoined provisions.

At this time, the Court finds that the notices do not condition, withhold, or terminate any specific federal funding, and thus do not run afoul of the terms of the preliminary injunction. The Court reiterates that, pursuant to the explicit language in the preliminary injunction order, Defendants "may not take any steps to implement, give effect to, or reinstate under a different name the directives in Section 3(g) of Executive Order 14,168 or Section 4 of Executive Order 14,187 that condition or withhold federal funding based on the fact that a healthcare entity or health professional provides gender-affirming medical care to a patient under the age of nineteen." ECF 116, at 2. Such an act would violate the Court's preliminary injunction. However, the Court finds that the notices themselves, in their current form and without additional acts by Defendants, do not

6

amount to implementing the prohibited directives under a different name. Accordingly, the Court cannot find that there is clear and convincing evidence that the agencies violated a specific and unequivocal command by this Court. To the extent Plaintiffs challenge the constitutionality of the agency notices beyond their relevance to enforcing the preliminary injunction, the Court notes that a motion to enforce the relatively narrow scope of the preliminary injunction is not the proper vehicle for doing so.

### III.  CONCLUSION AND ORDER

The Court therefore denies Plaintiffs' motion to enforce the preliminary injunction and will not, at least at this time, require Defendants to rescind the notices. However, the Court reiterates that this memorandum and order is issued without prejudice. To the extent information emerges indicating that Defendants have violated a clear and unequivocal command set forth in this Court's preliminary injunction, nothing in this memorandum and order shall be construed as a bar to filing a renewed motion.

For the foregoing reasons, it is, by the United States District Court for the District of Maryland, hereby **ORDERED** that Plaintiffs' motion to enforce the preliminary injunction, ECF 118, is **DENIED** without prejudice.

Dated: March 28, 2025

/s/
Brendan A. Hurson
United States District Judge