# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| PFLAG, INC., *et al.*, | |
| *Plaintiffs*, | |
| v. | Civil Action No. 8:25-cv-337-BAH |
| DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, | |
| *Defendants*. | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 62, Defendants respectfully move for a stay pending appeal of the Court's March 4, 2025 Order, ECF No. 116, which preliminarily enjoins Defendants on a nationwide basis "from conditioning, withholding, or terminating federal funding under Section 3(g) of Executive Order No. 14,168, *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, 90 Fed. Reg. 8615 (Jan. 30, 2025) and Section 4 of Executive Order No. 14,187, *Protecting Children from Chemical and Surgical Mutilation*, 90 Fed. Reg. 8771 (Feb. 3, 2025) based on the fact that a healthcare entity or health professional provides gender-affirming medical care to a patient under the age of nineteen." Order at 1-2 ECF. No. 116[1].

A stay pending appeal is necessary because three recent Supreme Court decisions undermine this Court's determination that Plaintiffs are likely to prevail on the merits of their claims and that universal relief is appropriate.   First, in *Trump v. American Federation of Government Employees*, No. 24A1174, 606 U.S. ___, 2025 WL 1873449 (Mem.) (U.S. July 8, 2025), the Supreme Court stayed a nationwide preliminary injunction against an executive order that directed agencies to "undertake preparations to initiate large-scale reductions in force (RIFs), consistent with applicable law[.]"  Exec. Order No. 14,210, § 3(c), 90 Fed. Reg. 9669, 9670 (Feb. 14, 2025).  The Executive Orders (EOs) challenged here similarly require any agency action to be taken consistent with applicable law.  Second, in *United States v. Skrmetti*, 605 U.S. __, 145 S. Ct. 1816 (2025), the Supreme Court upheld a Tennessee law addressing materially indistinguishable sex transition interventions on minors as the EOs challenged here; the Court determined that the

---

[1] The court's order partially staying district court proceedings in this case (Order, ECF No. 137), stayed only Defendants' deadline to respond to the Amended Complaint and Rule 16(b) deadlines, including the Rule 26(f) conference report; it does not prevent Defendants from filing, or the Court from resolving, the instant motion.

Tennessee law did not classify based on sex or transgender status and satisfied rational basis review.  Third, the Supreme Court's decision in *Trump v. CASA, Inc.*, No. 24A884, 2025 WL 1773631, at *11 (S. Ct. June 27, 2025), establishes that even assuming a preliminary injunction remains appropriate in this case, the nationwide preliminary injunction entered by the Court is overbroad and should be stayed to the extent it extends beyond the named plaintiffs and those members of the organizations who have submitted declarations establishing their standing.

The remaining stay factors likewise favor Defendants.  Accordingly, this Court should stay its preliminary injunction pending appeal.  In the alternative, at minimum, the Court should stay its preliminary injunction to the extent it extends beyond the named plaintiffs and those members of the organizations who have submitted declarations establishing their standing.

## ARGUMENT

Courts consider four factors in assessing a motion for stay pending appeal: (1) the movant's likelihood of prevailing on the merits of the appeal, (2) whether the movant will suffer irreparable harm absent a stay, (3) the harm that other parties will suffer if a stay is granted, and (4) the public interest.  *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970).

**I.      Defendants Are Likely To Prevail On The Merits Of Their Appeal.**

**A.      *The President acted within his authority in issuing the EOs.***

The challenged EOs direct federal agencies to exercise what discretion they have under existing law to avoid funding "gender ideology" or "gender affirming care."  Because the EOs merely tell agencies how to exercise their discretion within the limits established by law—and do not themselves terminate any funding—Plaintiffs' facial challenge to the President's authority to issue the EOs is without merit.

2

The Supreme Court's recent grant of a stay in *AFGE* underscores the point. There, an executive order directed agencies to "undertake preparations to initiate large-scale reductions in force (RIFs), consistent with applicable law[.]" Exec. Order No. 14,210, § 3(c), 90 Fed. Reg. at 9670. The plaintiffs sued to challenge the order and an implementing memorandum from the Office of Personnel Management and Office of Management and Budget that directed agencies to submit RIF plans for review, asserting that the RIFs would be unlawful without Congressional authorization. The district court entered a preliminary injunction barring implementation of the order and memorandum, without reviewing any actual agency plan for a RIF. The Supreme Court stayed the injunction, explaining that the government was "likely to succeed on its argument that the Executive Order and Memorandum are lawful" and emphasizing that the district court had "enjoined further implementation or approval of the plans based on its view about the illegality of the Executive Order and Memorandum, not on any assessment of the plans themselves." *Am. Fed'n of Gov't Emps.*, 2025 WL 1873449, at *1 ("*AFGE*"). As Justice Sotomayor observed in her concurrence, "the relevant Executive Order directs agencies to plan reorganizations and reductions in force 'consistent with applicable law,'" and because the "plans themselves" were not before the Court, it had "no occasion to consider whether they can and will be carried out consistent with the constraints of law." *Id*. (Sotomayor, J., concurring).

The Fourth Circuit likewise recently granted a stay of a preliminary injunction for similar reasons in *National Ass'n of Diversity Officers in Higher Education v. Trump*, No. 25-1189 (4th Cir. 2025). *See*, Order, No. 25-1189 (4th Cir. Mar. 14, 2025), ECF No. 29. There, the district court had enjoined the government from enforcing two executive orders that instructed agencies "to terminate, to the maximum extent allowed by law," all "diversity, equity, and inclusion" programs within federal grant and contract processes, finding the provisions likely

unconstitutional. *Id.* at 4; Exec. Order No. 14,151, § 2, 90 Fed. Reg. 8339 (Jan. 29, 2025); *see also* Exec. Order No. 14,173, 90 Fed. Reg. 8633 (Jan. 31, 2025). The Fourth Circuit found that the government was likely to succeed on the merits and granted a stay, with several concurring opinions emphasizing that the case "d[id] not challenge any particular agency action implementing the Executive Orders," Order at 9, No. 25-1189 (4th Cir. Mar. 14, 2025), ECF No. 29 (Rushing, J., concurring), that the executive orders merely "direct executive policy and actors," *id.* at 5 n.2 (Diaz, C.J., concurring), and that the executive orders did "not on their face violate" the Constitution, *id.* at 7 (Harris, J., concurring); *see also id.* at 9 (Rushing, J., concurring) (highlighting "serious questions about the ripeness of [the] lawsuit").

The same reasoning applies here. Plaintiffs do not challenge any action actually taken by an agency pursuant to the challenged EOs. They instead have brought a freestanding suit depending on the premise that the EOs impose some immediate obligation on agencies to act unlawfully in managing federal grant programs. That conclusion ignores the plain text of the EOs, which, like the Executive Orders at issue in *AFGE* and *National Ass'n of Diversity Officers*, direct the President's subordinates to take steps "as permitted by law," Exec. Order No. 14,168, § 3(e), "consistent with applicable law[,]" *see also* Exec. Order No. 14,168, §8(b), or "consistent with applicable law." Exec. Order No. 14,187, § 4. The President may instruct subordinate officials on how to exercise any discretion they possess in carrying out their duties, and to the extent plaintiffs are actually harmed by some exercise of agency discretion, they would be free to challenge that action in the future. But Plaintiffs' facial challenge to the EOs fails—as recently made clear in *AFGE* and *National Ass'n of Diversity Officers*.

**B.    The EOs do not discriminate on the basis of sex or transgender status, and they easily survive rational basis review.**

This Court's determination that Plaintiffs are likely to succeed on the merits of their constitutional and statutory discrimination claims rested on the Fourth Circuit's decision in *Kadel v. Folwell*, 100 F.4th 122 (2024) (en banc).  But, on June 30, 2025, the Supreme Court granted the petitions for writ of certiorari in that case, vacated the judgment, and remanded the case "for further consideration in light of *United States v. Skrmetti*, 605 U.S. ___ (2025)," 145 S. Ct. 1816 (June 18, 2025).  *Folwell v. Kadel*, No. 24-99, 2025 WL 1787687; *Crouch v. Anderson*, No. 24-90, 2025 WL 1787678.  The Supreme Court's decision in *Skrmetti* forecloses Plaintiffs' constitutional and statutory discrimination claims challenging the EOs here.

*Skrmetti* examined a Tennessee child-protection law proscribing sex transition interventions for minors, including the use of puberty blockers, cross-sex hormones, and surgery to address gender dysphoria.  The Supreme Court held that the Tennessee law was not subject to heightened review because it merely classified "on the basis of age" and "on the basis of medical use," and "[c]lassifications that turn on age or medical use are subject to only rational basis review."  *Skrmetti*, 145 S. Ct. at 1829.  The Court explained that the law classified on the basis of age because "[h]ealthcare providers may administer certain medical treatments to individuals ages 18 and older but not to minors."  *Id.*  And it also classified on the basis of medical use because "[h]ealthcare providers may administer puberty blockers or hormones to minors to treat certain conditions but not to treat gender dysphoria, gender identity disorder, or gender incongruence."  *Id.*

Like the Tennessee law at issue in *Skrmetti*, the Protecting Children EO classifies on the basis of age and on the basis of medical use.  The Order addresses specified sex transition

interventions—the use of puberty blockers, cross-sex hormones, and certain surgical procedures—for children under age 19, but not for older individuals.  Exec. Order No. 14,187, §§ 2(a), 2(c), 4.  These classifications, which "turn on age or medical use[,] are subject to only rational basis review," *Skrmetti*, 145 S. Ct. at 1829, and do not violate the prohibitions on sex discrimination in Section 1557 of the Affordable Care Act or Section 1908 of the Public Health Service Act.  The Defending Women EO likewise makes no classification of persons based on sex or transgender status; indeed, Section 3(e) and 3(g) do not draw lines based on anyone's status.  Moreover, insofar is this Court interpreted the Defending Women EO "as doing exactly what Section 4 of the [Protecting Children EO] does," Memorandum Opinion at 48-49, ECF No. 115 ("Mem. Op."), there is no basis for subjecting the Defending Women EO to a different level of scrutiny or reaching any different result.

The Supreme Court held that the Tennessee law at issue in *Skrmetti* "clearly" survived rational basis review because of concerns that interventions may have "irreversibl[e]" and long-term effects and that "minors lack the maturity to fully understand and appreciate the life-altering consequences of such procedures and [may later] express[] regret for medical procedures that were performed on or administered to them for such purposes when they were minors."  145 S. Ct. at 1835–36 (quoting Tenn. Code Ann. 68-33-101(h) (West 2023)).  The Court also observed current "medical and scientific uncertainty" about the risks and benefits associated with administering puberty blockers and hormones to address gender dysphoria, and it pointed out that there are "open questions regarding basic factual issues" on these matters.  *Id.* at 1836–37; *see id.* (citing Dr. Hilary Cass, *Independent Review of Gender Identity Services for Children and Young People: Final Report* 22, 179 (Apr. 2024), *available at* https://perma.cc/88P4-KVUN).  That "ongoing debate" provided further justification for Tennessee's statute as responding to that "uncertainty," while

also noting the potential for "less invasive approaches that are likely to result in better outcomes for the minor." *Id*. at 1836.

Those same considerations provide the "reasonably conceivable" basis required by rational basis review to support the effectively identical Protecting Children EO, *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993), which expressly echoes many of the same concerns about the long-term effects of the interventions—such as "sterilization" or other "lifelong medical complications," and the potential risks of "regret" by this "vulnerable" population, Exec. Order No. 14,187, § 1.  Indeed, the EOs here even more straightforwardly satisfy rational basis review:  unlike the state law in *Skrmetti*, the EOs do not purport to ban the identified interventions, but instead address only funding issues surrounding those interventions.

Because the EOs' age-based and medical-use classifications are not based on sex and are rationally related to their purpose in protecting the health and welfare of children, Plaintiffs' constitutional and statutory discrimination claims fail.

### C.     The preliminary injunction is overbroad.

Even if Defendants were not likely to prevail on appeal on the merits of Plaintiffs' claims (and they are), Defendants are likely to prevail on their argument that the preliminary injunction should be limited in scope.  This Court entered an expressly "nationwide" preliminary injunction that applies to the government's dealings with non-parties not before the court.  Mem. Op. at 62-63.  But the Supreme Court has subsequently made clear that the equitable authority of district courts is limited to "administer[ing] complete relief *between the parties*."  *CASA, Inc.*, 2025 WL 1773631, at *11 (quotation omitted).  This Court's injunction fails to comport with this basic rule, and thus, it should be stayed to the extent it applies beyond grant recipients that provide services

to or employ the named plaintiffs and association members who have demonstrated standing in this case.

The rationales this Court adopted in granting universal relief cannot survive *CASA*.  The Court believed that because its merits conclusions on constitutional questions would be "applicable to jurisdictions throughout the country," nationwide relief was appropriate.  Mem. Op. at 62-65.  But as *CASA* explained, "the question is not whether an injunction offers complete relief to *everyone* potentially affected by an allegedly unlawful act; it is whether an injunction will offer complete relief *to the plaintiffs before the court*."  2025 WL 1773631, at *11.  The Court also said that a "piecemeal approach" was "not appropriate" Mem. Op. at 62, 64, but *CASA* makes clear that that is the normal course of litigation:  once a party has received complete relief, providing relief to non-parties "would not render [the party's] relief any more complete."  *Id*.  Similarly, the Court noted that the Plaintiffs included membership organizations and that members of those organizations are "located throughout the country," and it therefore concluded that universal relief—which extends beyond members of the organizations—was required.  Mem. Op. at 63.  But the Supreme Court rejected an identical argument in *CASA*, where a district court had granted a universal injunction to a membership organization on the same theory.  *See CASA, Inc.*, 2025 WL 1773631, at *17 (Thomas, J., concurring); *CASA, Inc. v. Trump*, 763 F. Supp. 3d 723, 746 (D. Md. 2025), *appeal filed*, No. 25-1153 (4th Cir. Feb. 18, 2025) .

More generally, there is no basis to conclude that narrower relief would not completely remedy Plaintiffs' injuries.  The individual plaintiffs and other members of PFLAG who submitted declarations allege that they received treatment, or were scheduled to receive treatment, affected by the EOs, and identified the institutions providing treatment.  *See* Am. Compl. at 5-7, ECF No. 53; *see also* Declarations, ECF Nos. 69-36 to ECF No. 69-41; *and* ECF No. 69-44.  Similarly, the

members of GLMA who submitted declarations identified the institutions at which they work and for which they fear the loss of federal funds. *See* ECF Nos. 69-42, 69-43, 69-46, 69-47. Those injuries would plainly be fully remedied by an injunction that barred application of the EOs to the identified institutions. And even if plaintiffs could identify any lingering injury not fully remedied by that relief, those lingering effects would not justify the sweeping remedy of a universal injunction that applies to nonparties. *See CASA, Inc.*, 2025 WL 1773631, at *12 (explaining that complete relief is a "maximum" and not a "guarantee").

The only individuals identified as having standing in this case would receive complete relief from an injunction limited to the facilities at which they provide or receive interventions addressed by the EOs. Any broader injunction—and particularly the universal injunction the Court ordered—offends basic principles of equity and separately inflicts irreparable harm on the government, while doing nothing to remedy the injuries of the parties who have established standing. *See id.* at *15.

In recent weeks, several district courts have heeded the Supreme Court's clear direction and promptly narrowed the scope of their injunctions in response to *CASA's* mandate. *See* Modified Prelim. Inj., *Maryland v. Americorps*, No. 1:25-cv-01363-DLB, (D. Md. July 10, 2025), ECF No. 159 (modifying nationwide preliminary injunction regarding notice-and-comment requirements to apply only to plaintiff states in light of *CASA*); *see* Amended Order of Prelim. Inj., *California v. Trump*, No. 1:25-cv-10810-DJC, (D. Mass. July 18, 2025), ECF No. 116 (limiting nationwide injunction against enforcement of an executive order provision requiring heads of federal voter registration agencies to assess citizenship before providing voter registration forms to public assistance program enrollees, restricting the injunction to plaintiff states); *see* Order, *Nat'l Job Corps Ass'n v. Dep't of Lab.*, No. 1:25-cv-04641-ALC, (S.D.N.Y. July 24, 2025), ECF

No. 77 (modifying nationwide injunction against agency actions post-*CASA* to cover only the 31 centers operated by plaintiff operators and five additional centers where plaintiff Transportation Communications Union/IAM provides training services).

This Court should do the same. If the Court does not stay its injunction in its entirety, the Court should at a minimum stay the injunction to the extent it applies beyond the named plaintiffs and those members of the organizations who have submitted declarations establishing their standing.

## II.    *The Balance Of Equities, Including The Irreparable Harm Defendants Will Suffer, Favors Granting A Stay Of The Preliminary Injunction.*

Defendants will suffer irreparable harm absent a stay of the preliminary injunction. In particular, the Court's injunction impermissibly intrudes on the President's authority to direct his subordinates to take action to implement an administration's policy objectives, and that intrusion "into the workings of a coordinate branch of the Government" inflicts irreparable harm on the government. *INS v. Legalization Assistance Project of L.A. Cnty. Fed'n of Labor*, 510 U.S. 1301, 1306 (1993) (O'Connor, J., in chambers).

Allowing the injunction to stand also undermines important interests of the government and the public, whose interests "merge" in this context, *Nken v. Holder*, 556 U.S. 418, 435 (2009), in protecting the health and welfare of children. "A democratic society rests, for its continuance, upon the healthy, well-rounded growth of young people into full maturity as citizens," and the Supreme Court has accordingly "sustained legislation aimed at protecting the physical and emotional well-being of youth even when the laws have operated in the sensitive area of constitutionally protected rights." *New York v. Ferber*, 458 U.S. 747, 757 (1982). By enjoining implementation of the EOs, the preliminary injunction has hampered Defendants' ability to

respond to the reasonable concerns about sex transition interventions for minors that the Supreme Court recognized in *Skrmetti*.

Plaintiffs, moreover, will not suffer harm if the preliminary injunction is stayed. Plaintiffs do not challenge any actual agency action taken pursuant to the EOs, and the mere prospect than an agency might act unlawfully—notwithstanding the directives of the Orders themselves—is not sufficient to establish harm. And the Court's view that Plaintiffs face harm from "diminished access to high-quality health care[,]" Mem. Op. at 58 (quotation omitted), is inconsistent with the Supreme Court's recognition that there is at minimum "medical and scientific uncertainty" about the risks and benefits associated with sex transition interventions for minors, *Skrmetti*, 145 S. Ct. at 1836 (quotation omitted); *id.* at 1836–37; *see also id.* at 1840 (Thomas, J., concurring) ("there is no medical consensus on how best to treat gender dysphoria in children"), including concerns about irreversible consequences that children may come to regret as adults, *see id.* at 1841–43 (Thomas, J., concurring) (citing studies).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court stay its preliminary injunction pending appeal. In the alternative, the Court should stay its preliminary injunction to the extent it extends beyond the named plaintiffs and those members of the organizations who have submitted declarations establishing their standing.

Dated: July 28, 2025                    Respectfully submitted,

                                        BRETT A. SHUMATE
                                        Assistant Attorney General

                                        MICHELLE BENNETT
                                        Assistant Branch Director

                                        */s/ Robert C. Bombard*
                                        ROBERT C. BOMBARD

Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20530
Tel.: (202) 616-0773
robert.bombard2@usdoj.gov

*Counsel for Defendants*